Filed 8/15/22  In re Juan G. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JUAN G., a Person Coming Under the Juvenile Court Law. | B316023 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CERVANDO G.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK86058) |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Conditionally affirmed and remanded with directions.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Cervando G., the presumed father of six-year-old Juan G., appeals the October 5, 2021 order terminating his parental rights, contending only that the Los Angeles County Department of Children and Family Services breached its affirmative and continuing duty to inquire whether Juan may have Indian ancestry as defined by the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. (Welf. & Inst. Code, § 224.2, subds. (a) & (b).)[1] The Department does not dispute it failed to conduct the required inquiry. Instead, it argues we lack jurisdiction to consider the issue on appeal and, alternatively, the error should be deemed harmless because Cervando has not made an affirmative representation on appeal that any extended family member possesses meaningful information about Juan's possible Indian ancestry.

The Department's contention we lack jurisdiction to consider this issue necessarily fails in light of the holding of *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 (*Isaiah W.*) that a parent may challenge an earlier express finding of ICWA inapplicability in an appeal from a later order terminating parental rights. And this court has repeatedly—and recently—rejected the Department's overly restricted view of our obligations as an appellate court to

_____

[1] Statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

ensure the Department complies with the robust duty of inquiry mandated by the Legislature. (See, e.g., *In re Rylei S.* (2022) 81 Cal.App.5th 309 (*Rylei S.*); *In re Antonio R.* (2022) 76 Cal.App.5th 421; *In re Y.W.* (2021) 70 Cal.App.5th 542.) As requested by Cervando, we remand the matter for full compliance by the Department and the juvenile court with the inquiry and, if appropriate, notice provisions of ICWA and related California law.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition and Termination of Parental Rights*

On June 21, 2017 the Department filed a dependency petition with respect to Juan, then 19 months old, pursuant to section 300, subdivisions (a) (nonaccidental serious physical harm), (b)(1) (failure to protect), and (j) (abuse of sibling), based on allegations that Juan's mother, Dorisbeth Z., had physically abused and inappropriately disciplined Juan's two half sisters, Lisett and Litzy, who had been declared dependents of the court before Juan's birth, and that Cervando, with Dorisbeth's acquiescence, had violated a no-contact order issued in Lisett and Litzy's dependency case. On August 16, 2018 the juvenile court sustained an amended petition pursuant to section 300, subdivision (j), as to Juan, alleging Lisett had been sexually abused by a member of the children's household, placing Juan at risk of harm. Juan was declared a dependent child of the court and released to Cervando and Dorisbeth under the supervision of the Department.[2]

---

[2] In an appeal of the section 300, subdivision (j), finding as to him, Cervando acknowledged the juvenile court's assumption of dependency jurisdiction over Juan was also based on Dorisbeth's conduct, which included her physical abuse of Lisett and Litzy;

3

In December 2018 Juan was removed from Cervando and Dorisbeth's custody, and in February 2019 the court sustained a subsequent petition (§ 342) based on allegations of domestic violence and general neglect. Family reunification services, ordered at the disposition hearing in July 2019, were terminated in September 2020. At a contested selection and implementation hearing held on October 5, 2021 after several continuances, the court found Juan adoptable, determined no exception to adoption existed, terminated Cervando's and Dorisbeth's parental rights and designated Juan's current caregivers as prospective adoptive parents.

Juan filed a timely notice of appeal, checking the boxes on the Judicial Council form (JV-800) for an appeal for an order made pursuant to section 366.26 terminating parental rights.

2. *The Department's Abbreviated ICWA Investigation and the Juvenile Court's ICWA Finding*

The initial dependency petition concerning Juan filed on June 21, 2017 included the required Indian Child Inquiry Attachment (Judicial Council form ICWA-010(A)), on which the social worker reported Dorisbeth denied Juan had any Native American heritage. The detention report contained the same information and stated, "The Indian Child Welfare Act does not apply." Both Cervando and Dorisbeth filed Parental Notification

---

and he conceded he could not contest those findings or the court's exercise of jurisdiction over Juan. Cervando did not challenge any aspect of the court's disposition orders. Accordingly, we dismissed the appeal on the ground there was no justiciable controversy for which we could grant any effective relief. (*In re Juan G.* (June 18, 2019, B292260) [nonpub. opn.].)

4

of Indian Status forms (Judicial Council form ICWA-020) stating to their knowledge they had no Indian ancestry.

At the detention hearing on June 21, 2017, after indicating it had reviewed the parents' forms, the juvenile court stated, "I have no reason to know of any American Indian ancestry, and I find that the Indian Child Welfare Act does not apply." The minute order from the hearing similarly stated, "Court finds no ICWA as to this case." The court instructed the parents to notify the court if they subsequently received any information indicating they had American Indian ancestry.

The Indian Child Inquiry Attachment included with the first amended petition filed on November 20, 2017 again indicated Juan had "no known Indian ancestry." The Department's report for the jurisdiction/disposition hearing stated the court had found on June 21, 2017 that ICWA did not apply and Cervando and Dorisbeth in their subsequent contacts with the Department confirmed they were not aware of any Indian ancestry. The minute order from the August 16, 2018 jurisdiction/disposition hearing does not mention ICWA.

The jurisdiction/disposition report filed for the hearing on the section 342 subsequent petition stated ICWA did not apply to the case, but referred only to a May 2015 finding that had been made in the earlier filed case involving Juan's half sisters. Neither the minute order from the jurisdiction hearing sustaining the section 342 petition nor the order from the disposition hearing included an ICWA finding, although the disposition order formally removed Juan from parental custody.

Subsequent status review reports prepared for the six-month and 12-month review hearings (§ 366.21, subds. (e) & (f)) and the 366.26 reports prepared for the selection and

5

implementation hearing all simply stated IWCA does not apply. The October 5, 2021 minute order terminating Cervando's parental rights made no reference to ICWA, and the reporter's transcript from that hearing is similarly silent as to ICWA.

In sum, nothing in the record indicates that anyone other than Cervando and Dorisbeth were asked by the Department or the juvenile court about Juan's possible Indian ancestry, and the only ICWA finding was made on June 21, 2017 at Juan's initial detention hearing. The Department does not contend to the contrary.

## DISCUSSION

1. *ICWA and the Duties of Inquiry and Notice*

ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes. (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 551.) The statute authorizes states to provide "'a higher standard of protection'" to Indian children, their families and their tribes than the rights provided under ICWA. (*In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *Isaiah W.*, *supra*, 1 Cal.5th at p. 8).

To ensure Indian tribes may exercise their rights in dependency proceedings as guaranteed by ICWA and related state law, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice provided to

6

the appropriate tribes. (§ 224.2, subd. (a) [imposing on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child"]; see *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.) The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra,* 58 Cal.App.5th at p. 290; accord, *In re Antonio R., supra,* 76 Cal.App.5th at p. 429; see § 224.2, subds. (a)-(c).)[3]

---

[3] The Department's duty of inquiry, beginning at initial contact, as now defined in section 224.2, subdivision (b), was added to the Welfare and Institutions Code by Assembly Bill No. 3176 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 833, § 5), effective January 1, 2019. Assembly Bill No. 3176 substantially revised the provisions of California's ICWA-related statutes to conform their language to language in then recently adopted federal regulations and, recognizing California's higher standard for investigating whether a child may be an Indian child, to specify more clearly the steps a social worker, probation officer and court are required to take in making an inquiry into a child's possible status as an Indian child. (*In re T.G., supra,* 58 Cal.App.5th at p. 296.)

Although that legislation was not in effect when the initial dependency petition concerning Juan was filed in 2017, a hearing that culminates in termination of parental rights or an adoptive placement—that is, a section 366.26 selection and implementation hearing—is considered a separate "child custody proceeding" as to which ICWA and related state law requirements, including the duty of inquiry, apply. (See 25 U.S.C. § 1903(1); 25 C.F.R. § 23.2 (2022); Cal. Rules of Court, rule 5.481(a)(2); see also *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 785, fn. 11.) Because Cervando challenges

In addition, section 224.2, subdivision (e), imposes a duty of further inquiry regarding the possible Indian status of the child "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (See also Cal. Rules of Court, rule 5.481(a)(4) [further inquiry must be conducted if the social worker "knows or has reason to know or believe that an Indian child is or may be involved"].) Further inquiry includes, "but is not limited to," interviewing, as soon as practicable, extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2).)

If those inquiries result in reason to know the child is an Indian child,[4] notice to the relevant tribes is required. (25 U.S.C.

---

the implied finding of ICWA inapplicability underlying the order made at the section 366.26 hearing terminating his parental rights, California's ICWA-related statutes and rules of court in effect in 2021, when that hearing was held, apply in this appeal. (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 289, fn. 13 ["[t]he parties agree the [state's ICWA-related statutes] in effect in January 2020 when the section 366.26 hearings were held appl[y] to these appeals"]; *In re A.M.* (2020) 47 Cal.App.5th 303, 321 ["[s]ince Mother is appealing from the findings made at the September 6, 2019 section 366.26 hearing and not those in 2017 or 2018, the current ICWA statutes apply"].)

[4]     "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member

8

§ 1912(a); Welf. & Inst. Code, § 224.3; see *In re J.S.* (2021) 62 Cal.App.5th 678, 686; *In re T.G., supra*, 58 Cal.App.5th at p. 290.)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*In re Antonio R., supra*, 76 Cal.App.5th at p. 430; accord, *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here a parent . . . —has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

2. *The Department Failed To Adequately Investigate Juan's Possible Indian Ancestry*

Regardless of a parent's responses concerning his or her possible Indian ancestry on the ICWA-020 Parental Notification of Indian Status form or when questioned by an investigator from a child protective services agency or the court at the initial appearance, if a child has been detained, as Juan was, section 224.2, subdivision (b), requires the agency to ask not only the parents but also extended family members and others who have an interest in the child whether the child is, or may be, an

---

of a federally recognized tribe." (*In re T.G., supra*, 58 Cal.App.5th at p. 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

Indian child. (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 429 ["'[t]he duty to inquire begins with initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child'"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [same].)

ICWA defines "extended family member," if not separately defined by the law or custom of the Indian child's tribe, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).) Welfare and Institutions Code section 224.1, subdivision (c), provides "extended family member" is defined as provided in ICWA.

The Department's reports disclose its social workers or investigators had multiple contacts with maternal and paternal relatives of Juan who are extended family members, yet nothing in those reports or elsewhere in the record indicates the required ICWA-related inquiries were made.[5] Specifically, a social worker interviewed Juan's paternal aunt Georgina A. in December 2018 concerning the substantive allegations that led to the filing of the section 342 petition and his paternal uncle Elias G. in January 2019. A maternal great-aunt was being assessed to be a monitor, and placement with maternal aunt Tomasa L. was being

---

[5] Effective January 1, 2020 California Rules of Court, rule 5.481(a)(5) requires the Department "on an ongoing basis [to] include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status." The Department's conclusory statements that ICWA did not apply to Juan's case fall woefully short of satisfying this obligation.

10

evaluated. The Department also had contact information for Juan's maternal grandmother, but there apparently was no interaction with her.

From what appears in the Department's reports of its contacts with Cervando's and Dorisbeth's family, none of the relatives was asked about Juan's possible Indian ancestry. Nor is there any indication the Department attempted to identify anyone else who might have pertinent information concerning the family's history. As the Department's appellate counsel necessarily concedes, the Department failed to satisfy its duty of inquiry under section 224.2, subdivision (b). (See *In re J.C.* (2022) 77 Cal.App.5th 70, 78 ["[t]he Department did not fulfill its duty to conduct an adequate inquiry into whether J.C. may be an Indian child because it did not ask any extended family members—some of whom were readily available—whether J.C. had any possible Indian ancestry"]; *In re Antonio R., supra,* 76 Cal.App.5th at pp. 430-431 [Department failed to fulfill duty of inquiry by failing to ask family members about Indian ancestry despite multiple contacts with relatives]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [failure to speak to anyone other than mother about possible Indian ancestry was error]; *In re Y.W., supra,* 70 Cal.App.5th at p. 553 [Department failed to satisfy duty to inquire by failing to contact relatives; "once the social worker learned of a potentially viable lead to locate [relatives], she made no effort to pursue it"].)

The juvenile court also erred in failing to ensure the Department satisfied its duty of inquiry and in finding ICWA did not apply absent an adequate inquiry. (See *In re J.C., supra,* 77 Cal.App.5th at p. 79 ["The juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated

11

whether J.C. may be an Indian child.  There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case"]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431 ["[a]lthough section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2, subdivision (a), makes clear that the 'affirmative and continuing duty to inquire' whether a child is or may be an Indian child rests with both the Department *and the court*"].)

   3. *The Department's Jurisdiction Argument Lacks Merit*

   The juvenile court in *Isaiah W.*, *supra*, 1 Cal.5th 1 made a finding in January 2012 at the disposition hearing that ICWA did not apply to the case.  Ashlee, the child's mother, did not appeal the ICWA finding following entry of the disposition order.  (*Id.* at p. 10.)  The juvenile court in April 2013 terminated Ashlee's parental rights.  Ashlee appealed, contending the juvenile court erred in concluding there was no reason to know Isaiah was an Indian child and ICWA notice was unnecessary in the case.  The court of appeal held, because Ashlee failed to timely appeal from the ICWA finding subsumed in the disposition order, she was foreclosed from raising the issue in an appeal from the order terminating her parental rights.  (*Id.* at p. 7.)

   The Supreme Court reversed, explaining, "[T]he juvenile court had a *continuing* duty to inquire whether Isaiah was an Indian child in all dependency proceedings, including a proceeding to terminate parental rights.  In light of this continuing duty, the April 2013 order terminating Ashlee's parental rights was necessarily premised on a *current* finding by the juvenile court that it had no reason to know Isaiah was an

12

Indian child and thus ICWA notice was not required. . . . Properly understood, Ashlee's present appeal does not seek to challenge the juvenile court's finding of ICWA's inapplicability underlying the January 2012 dispositional order. It instead seeks to challenge the juvenile court's finding of ICWA's inapplicability underlying the April 2013 order terminating her parental rights. Ashlee's inaction in the face of the earlier order does not preclude her from now claiming in this appeal that the juvenile court erred in finding ICWA notice unnecessary." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 10.) Later in its opinion the Court restated its holding, "Although the juvenile court in this case found ICWA inapplicable at the January 2012 dispositional hearing, the court had an affirmative and continuing duty to determine ICWA's applicability at the April 2013 hearing to terminate Ashlee's parental rights. The court's April 2013 termination order necessarily subsumed a present determination of ICWA's inapplicability, and Ashlee brought a timely appeal from the April 2013 order, challenging that determination. The fact that Ashlee did not allege ICWA notice error in an appeal from the January 2012 dispositional order does not preclude her from raising the claim in this appeal." (*Id*. at p. 15.)

Cervando's challenge to the Department's failure to conduct the inquiry mandated by statute and necessary to support the juvenile court's finding that ICWA did not apply to Juan parallels Ashlee's situation in *Isaiah W.*, *supra*, 1 Cal.5th 1. Although Cervando appealed the juvenile court's August 2018 jurisdiction finding and disposition order, he did not at that time challenge the court's ICWA finding. He does so now in his appeal from the order terminating his parental rights. His appeal is properly before us: As was true in *Isaiah W.*, in light of the juvenile

court's affirmative and continuing duty to inquire whether a child for whom a petition under section 300 has been filed is or may be an Indian child, the court's order terminating parental rights was necessarily premised on a current (albeit implied) finding that the court had no reason to know Juan was an Indian child.[6]

The Department, which appears to only grudgingly accept the holding of *Isaiah W.*, *supra*, 1 Cal.5th 1,[7] nonetheless argues we lack jurisdiction to consider the ICWA-inquiry issue raised by Cervando because he "failed to designate Indian ancestry on his notice of appeal." In support it cites the general principle of appellate law that a notice of appeal must identify the particular judgment or order being appealed. (See, e.g., *In re Joshua S.* (2007) 41 Cal.4th 261, 272; Cal. Rules of Court, rule 8.405(a)(3).)

---

[6] Unlike the juvenile court in *Isaiah W.*, which repeated at the section 366.26 selection and implementation hearing its prior finding that it had no reason to know Isaiah was an Indian child (*Isaiah W.*, *supra*, 1 Cal.5th at p. 10), the juvenile court in the case at bar ignored its affirmative obligation to address ICWA once again at the hearing at which it terminated Cervando's parental rights. (See *id.* at p. 15; see also Cal. Rules of Court, rule 5.481(a)(2).) The absence of an express ICWA finding does not affect Cervando's right to appeal from the termination order, which, as the *Isaiah W.* Court explained, "necessarily subsumed a present determination of ICWA's inapplicability." (*Isaiah W.*, at p. 15.)

[7] The Department in the opening paragraph of its respondent's brief emphasizes the several years gap between the initial detention hearing at which Juan's possible Indian ancestry was formally addressed and the current timely appeal following termination of parental rights—an entirely irrelevant datum in light of *Isaiah W.*, *supra*, 1 Cal.5th 1.

Cervando did just that. His notice of appeal identified the October 5, 2021 order terminating his parental rights—the order he is challenging as defective because necessarily premised on an ICWA finding made without an adequate inquiry by the Department. Yet the Department argues his notice of appeal is not sufficient because Cervando did not separately designate the ICWA finding in the notice. Lacking any legal support for this novel proposition, the Department points out that in *Isaiah W.*, *supra,* 1 Cal.5th at page 15, the Supreme Court emphasized that Ashlee "brought a timely appeal from the April 2013 order, challenging that [ICWA] determination." The Department insists this language must mean the ICWA finding was expressly identified in Ashlee's notice of appeal and then extrapolates from that premise that the failure to separately designate the ICWA finding deprives an appellate court of jurisdiction to hear the issue. On its face the language quoted from the Supreme Court—which appears after the Court's explanation that a current ICWA finding is necessarily subsumed in an order terminating parental rights—imposes no such requirement. (See Welf. & Inst. Code, § 395 [orders subsequent to the disposition order may be appealed in the same manner as an order after judgment]; Code Civ. Proc., § 906 [upon appeal from a postjudgment order, the reviewing court may review any intermediate ruling that necessarily affects the order being appealed].)

Moreover, the pertinent portions of the notice of appeal filed in the court of appeal in *In re Isaiah W.*, B250231, are identical to the notice of appeal filed by Cervando: On the printed Judicial Council form JV-800 the boxes in each notice are checked for an appeal from an order pursuant to section 366.26

15

terminating parental rights.[8]  Nowhere on the notice in *In re Isaiah W.*, B250231, is ICWA mentioned.  Nor need it be.

4. *The Department's Failure To Comply with Its Affirmative Duty of Inquiry Was Not Harmless Error*

The Department recognizes that, on this record, its failure to inquire of any of Juan's extended family members about the child's possible Indian status as mandated by section 224.2, subdivision (b)—including family members it actually interviewed about Dorisbeth's inappropriate parenting or evaluated for purposes of serving as a monitor or potential placement for Juan—requires reversal under the governing harmless error standard we articulated in *In re Antonio R.*, *supra*, 76 Cal.App.5th 421 and *In re Y.W.*, *supra*, 70 Cal.App.5th 542.  As we held in *In re Antonio R.*, "Where the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible. . . .  [I]n determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian

---

[8]  On June 30, 2022 we notified the parties that the court intended to take judicial notice of the notice of appeal filed in *In re Isaiah W.*, B250231—a case in which the Department was the respondent in both Division Three of this court and the Supreme Court—and provided a copy of the notice.  No party has objected.  (See Evid. Code, §§ 452, subd. (d), 455, subd. (a), 459, subds. (a) & (c).)  We now judicially notice the *In re Isaiah W.* notice of appeal.

16

child." (*In re Antonio R.*, at p. 435; see *In re Benjamin M., supra,* 70 Cal.App.5th at pp. 744, 745 ["a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"; "[w]hile we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother"].)

Recycling the arguments it made last month in *Rylei S., supra,* 81 Cal.App.5th 309, the Department once again attempts to persuade us to excuse its wholesale noncompliance with its statutory obligations by mischaracterizing our decisions as improperly applying the doctrine of structural error to its failures to comply with its duty under section 224.2, subdivision (b), to contact extended family members about a child's possible Indian status; and asserting (with quotations from a case from this Division decided more than a decade before the current version of section 224.2 was enacted) that, absent some affirmative representation on appeal by a parent that further inquiry would reveal information sufficient to invoke ICWA, any error in failing to conduct the ICWA-related inquiry mandated by the Legislature must be deemed harmless.

We explained in detail in *Rylei S.* why neither argument had merit. In brief, as to the Department's objection that we are applying an impossible-to-meet structural error analysis, we provided an example of when failure to interview an extended family member would be harmless error and emphasized that, at the least, the Department must make "a genuine effort to investigate the child's Indian status by complying in good faith

17

with the mandate of section 224.2, subdivisions (b) and (e)." (*Rylei S.*, *supra*, 81 Cal.App.5th at p. 325.) No such good faith effort was made in this case.

The Department's second contention—any error should be deemed harmless unless the parent on appeal makes an affirmative representation sufficient to invoke ICWA—is premised on the faulty notion that parents will necessarily know whether their family is entitled to the protections of ICWA. As we have repeatedly explained, the Department's position ignores the Legislature's determination in 2018 with the adoption of section 224.2, subdivision (b), that child protective agencies may not limit their investigation of a child's possible Indian status to the child's parents—a determination reflecting evidence-based findings on the severe impact on a family's awareness of its Indian ancestry resulting from this country's decades-long efforts to destroy Indian families, force assimilation, and eradicate Indian history and culture. (*Rylei S.*, *supra*, 81 Cal.App.5th at pp. 321-322; *In re Antonio R.*, *supra*, 76 Cal.App.5th at pp. 431-432; see *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295.) We adhere to our previously expressed position: A parent "does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial. . . . It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim." (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 556; accord, *In re Antonio*, at p. 435; see *Rylei S.*, at pp. 320-321.)

18

## DISPOSITION

The October 5, 2021 section 366.26 order terminating Cervando's parental rights is conditionally affirmed. The matter is remanded to the juvenile court for full compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

19